IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZEBRA TECHNOLOGIES CORPORATION, | § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-00055-K |
| ONASSET INTELLIGENCE, INC. | § § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Zebra Technologies Corporation's Motion to Compel Discovery (the "Motion to Compel") (Doc. No 129). Defendant OnAsset Intelligence, Inc. filed a Response to Zebra's Motion to Compel (the "Response") (Doc. No. 116-1, sealed version). Plaintiff Zebra Technologies Corporation filed a Reply In Support of Motion to Compel Discovery (Doc. No. 135). After careful consideration of the Motion, the responsive briefing and evidence submitted by the parties, the relevant portions of the record, and the applicable law, the Court **GRANTS** the Motion to Compel as follows.

I.     **Applicable Law**

Federal Rule of Civil Procedure 37(a) governs a party's motion for an order compelling discovery. Rule 37(a)(3)(B) specifically provides that:

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

> (i) a deponent fails to answer a question asked under Rule 30 or 31;
> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
> (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.

FED. R. CIV. P. 37(a)(3)(B).

"A party may move to compel production of materials that are within the scope of discovery and have been requested but not received." *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) (citing FED. R. CIV. P. 37(a)). Materials and information are discoverable if they are relevant to a party's claim and discovery is proportional to the needs of the case. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279-80 (N.D. Tex. 2017) (citing FED. R. CIV. P. 26(b)(1)). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* Relevant matter includes matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery, however, has limits, and matter that is not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26. *Id.*

A district court has broad discretion when supervising discovery in a matter and in determining the scope of discovery. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n. 114 (5th Cir. 1990); *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 550 (5th Cir.1980). Courts construe relevance broadly, as a document need not,

by itself, prove or disprove a claim or defense or have strong probative force to be relevant. *Samsung Elecs.*, 321 F.R.D. at 280.

The party seeking an order compelling another party to respond to discovery has the burden of showing that the material and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010). Once the moving party meets its burden of proof, the burden shifts to the party resisting discovery to show why the discovery sought is irrelevant, overly broad, or unduly burdensome or oppressive. *Id*. A district court is authorized to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1); *accord Landry*, 901 F.2d at 435.

## II.    Analysis

### A.    30(b)(6) Deposition Witness

In its Motion to Compel, Plaintiff Zebra Technologies Corporation ("Zebra") complains that Defendant OnAsset Intelligence, Inc. ("OnAsset") failed to produce live witnesses for deposition regarding certain designated topics and requests that the Court order OnAsset to produce such witnesses. In the course of discovery in this matter, Zebra designated a number of Rule 30(b)(6) topics for which it requested that OnAsset produce a representative witness to provide deposition testimony. In its Response, OnAsset asserted that it was unnecessary to produce deposition witnesses for some topics because Zebra has already had the opportunity to depose OnAsset's corporate

representatives on the topics in the ITC investigation that involved the same parties and the same patents. (This matter was stayed pending the ITC investigation.)

Zebra argues that it should be allowed to depose a corporate witness from OnAsset in this matter on those topics. The particular topics at issue are designated by Zebra as Topic Nos. 2-9, 13, 16-19, 21, 22, 34-38, 40, 41, and 46.

These topics are:

| | |
|---|---|
| 2 | The naming and/or numbering conventions for model names and/or numbers and/or product identification names for the Accused Products, including any prior or future versions of the Accused Products. |
| 3 | The design, operation, function, and features of all Accused Products, including any prior or future versions of the Accused Products. |
| 4 | The structure, operation, components, methods of use, capabilities, and all other technical characteristics of the Accused Products, including any prior or future versions of the Accused Products. |
| 5 | Any optional or additional protocols or technologies supported by the Accused Product supported by OnAsset. |
| 6 | Any accessories, whether internal (added by OnAsset) or external (added by a customer) used with any of the Accused Products |
| 7 | Any optional or add-on features purchased or used by customers. |
| 8 | The communication standards supported by each Accused Product. |

| 9 | Any certifications for each Accused Product. |
|---|---|
| 13 | The design, development, manufacturing, assembly, and/or importation of the Accused Products or components of the Accused Products by OnAsset. |
| 16 | The design, development, operation, functionality, and features of all Accused Products under development by OnAsset but not yet offered for sale, including the components thereof, that OnAsset intends to import into the United States, sell for importation into the United States, and/or sell within the United States after importation. |
| 17 | The identification of products in development that will include functionality similar to the functionality of the Accused Products described in the claim charts attached to the Complaint, and any supplemental claim charts provided by Zebra. |
| 18 | The locations of manufacture and/or assembly of the Accused Products and components thereof as well as the roles and/or responsibilities of any entities in these locations. |
| 19 | Testing and quality control of any Accused Product. |
| 21 | For each Accused Product, any and all present and/or future repair services for each and every Accused Product and component thereof. |
| 22 | For each Accused Product, any and all present and/or future replacement parts and the distribution of replacement parts for each and every Accused Product and component thereof. |
| 34 | The design and development of the Accused Products. |

| 35 | The software or firmware for the Accused Products. |
|---|---|
| 36 | The functionality of the RF transceivers for the Accused Products. |
| 37 | The baseband processing performed by the Accused Products. |
| 38 | The design objectives provided to or formulated by the designers of each of the Accused Products, including but not limited to, the final specifications for each of the Accused Products. |
| 40 | For each Accused Product, all drawings, schematics, block diagrams, or other documents that accurately depict the current version of the product and any of its relevant sub-assemblies or components. |
| 41 | Any contracting, sub-contracting, manufacturing and/or original equipment manufacturing services provided to OnAsset and relevant to the Accused Products infringing features and any components thereof. |
| 46 | All instructions, manuals, specifications, white papers, or brochures that are provided or made available to OnAsset's current, past, or potential customers and/or users of OnAsset's Accused Products. |

OnAsset does not assert that any of these are improper topics that are not relevant to the issues in this case. Instead, OnAsset asserts that all of these topics are identical to or very similar to topics for which it has already produced deposition witnesses in the ITC matter and, therefore, OnAsset does not need to produce witnesses on the topics in this matter. Instead, OnAsset designated prior deposition testimony of witnesses from the ITC matter. OnAsset argues that since the Accused Products in this

matter are the same as those in the ITC matter, there is no need for further depositions on these topics. Zebra responds that this matter is not exactly the same as the ITC matter. For example, the ITC matter did not include the '952 patent or concern products accused of infringing the '952 patent.

The Court agrees with Zebra that OnAsset should be able to depose a live 30(b)(6) witness in this matter to address all of the above listed topics for all of the Accused Products and patents in suit in this matter. This will allow Zebra to conduct discovery related to the relevant issues in this matter, which it should have the right to do. The Court **grants** Zebra's Motion to Compel as to Zebra's request to depose an OnAsset witness or witnesses on the above listed topics 2-9, 13, 16-19, 21, 22, 34-38, 40, 41, and 46.

**B.    Zebra Interrogatory No. 12 and Requests for Production Nos. 45-47 and 69-70**

Zebra next argues that OnAsset should be required respond to Zebra Interrogatory No. 12 and Requests for Production Nos. 45-47 and 69-70. In particular, Zebra is seeking information related to OnAsset's business with and interactions with a source of funding, Main Street Capital Corporation. Specifically, Zebra seeks "all agreements with and investment pitch materials provided to Main Street Capital."

Interrogatory No 12 requests OnAsset to: "Identify (i) any agreements, licenses, or contract, or the negotiation thereof, relating to any Accused Product, including, but not limited to, any agreements, licenses, or contracts relating to any intellectual property marked on an Accused Product and any agreements, licenses, or contracts

concerning the funding used, at least in part to design, manufacture, market, or sell an Accused Product; and (ii) the Person(s) most knowledgeable concerning such agreements, licenses, or contracts."

The requests for production at issue are:

**Request for Production No. 45**: All Documents relating to or evidencing any agreements, licenses, or contracts between You and Your customers or partners regarding any Accused Product.

**Request for Production No. 46**: All Documents relating to or evidencing any agreements, licenses, or contracts between You and Your supplier(s) of components used in any Accused Product.

**Request for Production No. 47**: All Documents relating to or evidencing any agreements, licenses, or contracts between You and a Third-Party regarding product tracking or related products or services.

**Request for Production No. 69**: All patent license agreements, royalty agreements, covenants-not-sue, technology agreements or similar agreements entered into by OnAsset related to RFID technology or the Accused Products.

**Request for Production No. 70**: Documents sufficient to show the total amount of royalties paid by You under patent license agreement, royalty agreement, covenant-not-sue, technology agreement or similar agreement related to the Accused Products.

Zebra argues that OnAsset should be ordered to respond to these discovery requests as they pertain to OnAsset's business dealings with Main Street Capital. Zebra

argues that the information and documents are relevant to fundamental issues in this litigation, such as the valuations of the Accused Product and calculation of a reasonable royalty rate.

In its Response, OnAsset asserts that the Main Street Capital documentation is not responsive to the asserted requests for production. Regarding Interrogatory No. 12, OnAsset argues that the Court should not compel a response to this interrogatory because, in its Motion to Compel, Zebra identifies only specific documents that it wants OnAsset to produce. OnAsset also argues that any agreement between it and Main Street Capital is not relevant to the matters in this case.

The Court disagrees with OnAsset on both points. Interrogatory No. 12 asks for OnAsset to identify any agreements, licenses, or contracts concerning the funding used, at least in part to design, manufacture, market, or sell an Accused Product. Seeking a funding agreement appears to be exactly the purpose of OnAsset's business interactions with Main Street Capital. Therefore, the identification of any agreements, licenses, or contracts concerning funding from Main Street Capital is responsive to this interrogatory. Furthermore, it is clear from the Motion to Compel that Zebra is seeking an order compelling OnAsset to fully respond to this request regarding Main Street Capital.

Regarding the requests for production and the Main Street Capital documentation that Zebra seeks, the Court agrees with Zebra that the information is relevant to the issues in the case, is within the realm of discoverable material, and is

responsive to at least one of the requests for production. For example, Request for Production No. 45 asks for "All Documents relating to or evidencing any agreements, licenses, or contracts between You and Your customers or partners regarding any Accused Product." If, for example, OnAsset entered into a funding agreement for the purposes of funding the development, marketing, or sales an Accused Product, then that agreement would be responsive to this request.

Regarding the relevance of the requested information and documents, OnAsset asserts that this was a loan transaction that does not have any relevancy to the issues in this case. Zebra argues that since the apparent purpose of the loan was to further the development and sales of OnAsset products, including the Accused Products, the documentation likely contains information highly relevant to issues in this matter, such as valuations of the technology.

The Court agrees with Zebra that the information and documentation should be produced because it may, at the very least, lead to admissible evidence regarding matters in this litigation. For these reasons, the Court **grants** Zebra's Motion to Compel as to Interrogatory No. 12 and Requests for Production Nos. 45-47 and 69-70 as they pertain to OnAsset's agreement with Main Street Capital.

### C.    Zebra's Request for Production No. 40

Zebra next asserts that OnAsset failed to fully respond to Zebra's Request for Production No. 40. This request for production is:

**Request for Production No. 40:** All Documents and communications concerning or relating to any internal or independent effort to assign a value of any technology incorporated into the any [sic] of the Accused Products.

In particular, Zebra seeks production of a 2012 OnAsset patent valuation. The valuation relates to OnAsset's patents, not to the patents in suit in this matter. Zebra is aware that this valuation exists because OnAsset told Zebra that a valuation occurred, but OnAsset refuses to produce the valuation documentation. Zebra argues that this information is responsive to Request for Production No. 40 and is relevant to the issues in this case. According to Zebra, since OnAsset's patents are directed towards Zebra's products, including the Accused Products, the valuation is relevant to a determination of the value of the portion of the Accused Products that is related to Zebra's patents, which are the patents in suit.

OnAsset responds that Zebra is not entitled to production of the valuation because, since it is a valuation of OnAsset's patents and not related to Zebra's patents, it is not relevant here.

The Court agrees with Zebra's assertion that OnAsset should produce the valuation for Zebra to review. While the valuation is of OnAsset's patents, Zebra is entitled to review the valuation documentation so that it may determine if any of the information contained therein is relevant to the value of the features in OnAsset's products that are allegedly related to the infringement of Zebra's patents-in-suit. For

these reasons, the Court **grants** Zebra's Motion to Compel as it relates to Zebra's Request for Production No. 40 and the 2012 OnAsset Patent Valuation.

> ### D.    Zebra's Interrogatory No. 10

Zebra also argues that OnAsset failed to fully respond to Zebra's Interrogatory No. 10. This interrogatory is:

**Interrogatory No. 10:** For each month since the first sale, state the total number of units sold, the gross revenue, the net profits, the profit margins, and the costs associated with each Accused Product and service utilizing each Accused Product on a product-by-product or service-by-service basis (as applicable), and set forth all bases for your response.

Zebra argues that it is entitled to the relevant sales data from each Accused Product because such information is relevant to damages calculations and to the determination of reasonable royalties. Zebra acknowledges that OnAsset has produced some sales information from 2019 forward.

In its Response, OnAsset argues that the requested information prior to 2019 is not relevant to the issues in this lawsuit because the earliest date from which damages may run is December 2019. Therefore, sales information prior to this date is not relevant. OnAsset also points out that it does not maintain the information Zebra requests as it has been requested. OnAsset also asserts that responding to the request beginning from the first sales dates would be onerous because of OnAsset's limited size

and resources, especially since the requested information spans back to 10 years before the earliest date from which the damages period may run in this matter.

The Court agrees with Zebra that this request may have some relevance to matters in this case or, at least, may lead to discoverable evidence. Therefore, the Court **grants** Zebra's Motion to Compel related to Interrogatory No. 10.

However, the Court is not inclined to order OnAsset to solely bear the burden of producing the requested information.  The older the information is, the more unlikely it is to have some relevance or lead to discoverable evidence. Accordingly, OnAsset shall bear the expense to produce only the responsive information for the time period beginning December 2017 and ending December 2019.  If Zebra insists on obtaining responsive information from the time period beginning from the first date of a sale of an Accused Product and ending November 2017, then Zebra shall bear the expense for the production of such information.

## III.    Conclusion

The Court **GRANTS** Zebra's Motion to Compel as to Zebra's request to depose an OnAsset Rule 30(b)(6) witness(es) on the above-described topics 2-9, 13, 16-19, 21, 22, 34-38, 40, 41, and 46. <u>Within 7 days of the date of this Order</u>, OnAsset shall designate a corporate representative(s) to serve as a deponent witness(es) on these topics. <u>Within 30 days of the date of this Order</u>, OnAsset shall make any designated deponent witnesses(es) available for deposition by Zebra.

The Court **GRANTS** Zebra's Motion to Compel as to Zebra's Interrogatory No. 12 and Requests for Production Nos. 45-47 and 69-70 as they pertain to OnAsset's agreement with Main Street Capital. Within 30 days of the date of this Order, OnAsset shall serve on Zebra a supplemental response to Interrogatory No. 12 that provides information responsive to this interrogatory that is related to OnAsset's business dealings with Main Street Capital. Within 30 days of the date of this Order, OnAsset shall also serve on Zebra supplemental responses to Requests for Production Nos. 45-47 and 69-70 as they relate to OnAsset's business dealings with Main Street Capital, including all agreements with and investment pitch materials provided to Main Street Capital.

The Court **GRANTS** Zebra's Motion to Compel as it relates to Zebra's Request for Production No. 40 and the 2012 OnAsset Patent Valuation. Within 30 days of the date of this Order, OnAsset shall serve on Zebra a supplemental response to Request for Production No. 40, including the 2012 OnAsset Patent Valuation.

The Court **GRANTS** Zebra's Motion to Compel related to Zebra's Interrogatory No. 10. Within 30 days of the date of this Order, OnAsset shall serve on Zebra a supplemental response to Request for Production No. 10 that includes sales data and other responsive information for the time period beginning December 2017 and ending December 2019. OnAsset shall bear the costs of producing this responsive information for this time period.

If Zebra wants responsive information to Interrogatory No. 10 for the time period beginning from the first date of sale of an Accused Product and ending November 2017, then, <u>within 7 days of the date of this Order</u>, Zebra shall provide written notice of the same to OnAsset. <u>Within 7 days of receiving such notice</u>, OnAsset shall provide Zebra with a true and correct reasonable cost to produce the information. Such costs may include OnAsset's manpower, expenses, and attorneys' fees necessary to produce such information (the "notice of cost"). If Zebra pays the notice of cost within 7 days of receipt of said notice, then, <u>within 30 days of the receipt of Zebra's payment</u>, OnAsset shall produce the information for the time period from the first date of sale of an Accused Product through November 2017. Any responsive sales data produced by OnAsset in response to Zebra's Interrogatory No. 10 may be provided on a quarterly basis and need not be provided on a monthly basis.

**SO ORDERED.**

Signed July 9th, 2025.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE