IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZEBRA TECHNOLOGIES CORPORATION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-00055-K |
| ONASSET INTELLIGENCE, INC. | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant OnAsset Intelligence, Inc.'s Motion to Strike Zebra's Undisclosed and Unreliable Expert Opinions (the "Motion") (Doc. No. 202). Plaintiff Zebra Technologies Corporation ("Zebra") filed a Response (Doc. No. 156), and Defendant OnAsset filed a Reply Brief (Doc. No. 168). For the following reasons, the Court **DENIES** the Motion.

I. Applicable Law

Federal Rule of Civil Procedure 26 governs the designation of expert witnesses. Rule 26 provides that a party must disclose to other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. FED. R. CIV. P. 26(a)(2)(A). If the expert witness is one who is not required to provide a written report, then the party offering the expert witness must disclose: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the

witness is expected to testify. *Id.* 26(a)(2)(C). When a written report is not required, the burden to disclose relevant information regarding expert testimony, the opinions of experts, and the facts underlying those opinions is not as extensive as that required when an expert report is required. FED. R. CIV. P. 26 advisory committee's notes to 2010 amendments.

However, this less extensive disclosure standard does not obviate the need to provide the disclosures expressly required Rule 26. *State Auto. Mut. Ins. Co. v. Freehold Mgmt, Inc.*, Civil Action No. 3:16-CV-2255-L, 2019 WL 1436659, at *13 (N.D. Tex. March 31, 2019)(Lindsay, J.). The disclosure must state opinions, not merely topics of testimony. *Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, Civ. Action No. 3:14-CV-1028-D, 2017 WL 90366, at *2 (N.D. Tex. Jan. Dec. 16, 2016); *see Carr v. Montgomery Cty., Tex.*, 2015 WL 5838862, at *3 (S.D. Tex. Oct. 7, 2015); *Tolan v. Cotton*, 2015 WL 5332171, at *7 (S.D. Tex. Sept. 14, 2015). The disclosure must also contain at least a summary of the facts upon which the opinions are based and the failure to do so renders the disclosure deficient. *See Carr*, 2015 WL 5838862, at *3; *Tolan*, 2015 WL 5332171, at *7.

Any opinions that are not properly disclosed in accordance with the Rule 26(a) may be excluded "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Exclusion, however, is not mandatory or automatic but, instead, is a matter within the court's discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). In deciding whether to exclude an expert witness, the court is guided by

four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert may provide opinion testimony when, it is more likely than not that: an expert's knowledge will help the trier of fact to understand the evidence or to determine a fact issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. FED. R. EVI. 702.

Trial courts serve as the gatekeeper of expert testimony to ensure the reliability and relevance of an expert's testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-93 (1993); *accord Kumho Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 147 (1999). Expert testimony must be reliable or trustworthy. *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007). The goal of *Daubert's* gate-keeping function is to ensure the reliability and relevance of expert testimony. *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999). A district court must first determine if the expert testimony is reliable, which requires an assessment of whether the reasoning or methodology underlying the testimony is valid. *Id.* The district court must then

determine "whether that reasoning or methodology can be properly applied to the facts in issue, that is, whether it is relevant." *Id.*

The proponent of expert testimony bears the burden of proof to show that the expert is qualified and the evidence is relevant to the suit and is reliable. *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003); *see Kumho Tire Co. Ltd*, 526 U.S. at 147. Relevant expert evidence is evidence that helps the trier of fact to understand the evidence or to determine a fact issue. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244-45 (5th Cir. 2002). Reliable expert evidence is evidence that is grounded in methods and procedures of science and that is beyond subjective belief or unsupported speculation. *See Daubert*, 509 U.S. at 590. Expert testimony must meet the threshold of reliability by following accepted methodologies in the relevant field. *Id* at 592-93. The test for reliability is "flexible" and a district court has broad latitude when it decides how to determine reliability. *Kumho Tire*, 526 U.S. at 147; *Pipitone*, 288 F.3d at 244. The analysis depends on the nature of the issue, the witness's expertise, and the subject of the testimony. *Micro Chem, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law).

Although it acts as gatekeeper, the court's role is not intended to be a replacement for the adversary systems. *Id.* The requirement that expert testimony be based on sufficient facts or data "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." *Id.* The requirement that expert testimony be reliable does not require

a proponent of the evidence to prove that the expert's testimony is correct. *Id.* at 1392. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *accord Micro Chem.*, 317 F.3d at 1392; *Pipitone*, 288 F.3d at 250. "When the methodology is sound, and the evidence relied upon is sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

"An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVI. 703. "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* "An opinion is not objectionable just because it embraces an ultimate issue." *Id.* 704.

## II. Analysis.

In the Motion, OnAsset challenges the opinions of two of Zebra's experts regarding non-infringing alternatives. OnAsset asserts that these expert opinions should be stricken because Zebra did not timely identify any non-infringing alternative or assert non-infringing alternatives as part of its damages model in relation to fact discovery. In addition, OnAsset challenges the expert testimony of one of Zebra's

expert witnesses regarding a two transceiver limitation of the claims of the '219 patent, asserting that the opinion should be stricken because it is unreliable.

## A. Expert Opinions Regarding Non-Infringing Alternatives

In the Motion, OnAsset asks the Court to strike what OnAsset alleges are undisclosed and untimely non-infringing alternative opinions. Specifically, OnAsset asserts that portions of the expert testimony of two of Zebra's expert witnesses should be excluded. The expert witnesses are Dr. Jacob Sharony and Ms. Joanne Johnson, who are Zebra's technical and damages experts, respectively.

The portions of these experts' testimony that OnAsset seeks to strike relate to asserted non-infringing alternatives. Dr. Sharony provides expert testimony in which he identifies possible non-infringing alternatives. Ms. Johnson provides damages testimony regarding those non-infringing alternatives. OnAsset asserts that, during fact discovery, it served on Zebra an interrogatory that addressed non-infringing alternatives and, in its response, Zebra failed to identify that it intended to rely on non-infringing alternatives in its damages assessment and failed to identify any possible non-infringing alternatives.

According to OnAsset, the later propounded expert testimony should be stricken because Zebra did not disclose this information in fact discovery in response to the interrogatory. OnAsset asserts that it was prejudiced by the withholding of such information until service of the relevant expert reports. For these reasons, OnAsset requests the Court to strike this expert testimony and to exclude expert testimony

addressing the non-infringing alternatives and damages calculations that utilize those non-infringing alternatives.

OnAsset relies on its Interrogatory No. 3 to assert that Zebra had an obligation to specifically disclose in fact discovery any non-infringing alternatives that it intended to rely on or that were part of Zebra's damages theory. Interrogatory No. 3 asked for Zebra to "explain Zebra's damages theory and to identify what amount would constitute a reasonable royalty if OnAsset is found to infringe one or both of U.S. Patent No. 6,895,219 and U.S. Patent No. 10,496,952."

In response Zebra responded "… This contention interrogatory is premature, Zebra will provide its expert opinions and legal contentions, as appropriate, in accordance with the case schedule Zebra reserves the right to supplement this response, including its expert opinions and legal contentions, as appropriate, ….". Zebra further supplemented its response on the last day of fact discovery to recite the *Georgia-Pacific* factors without mentioning non-infringing alternatives. Therefore, in what appears to be a rather limited discovery response, Zebra did not mention any non-infringing alternatives or that non-infringing alternatives would be part of Zebra's damages model.

The very next day, however, Zebra did serve its opening expert reports that identified possible non-infringing alternatives and included damage calculations based on those non-infringing alternatives. OnAsset asserts that Zebra should have identified the non-infringing alternatives in fact discovery in response to Interrogatory No. 3, and because it did not, Zebra failed to timely disclose its non-infringing alternatives.

The Court disagrees with OnAsset. First, it is not entirely clear that Interrogatory No. 3 as served on Zebra asks for Zebra to identify any non-infringing alternatives. Interrogatory No. 3 is a general inquiry into Zebra's damages models and calculations. It does not mention or ask for any information specifically regarding non-infringing alternatives. Therefore, it is not clear that Zebra was required to include information regarding non-infringing alternatives in its response. If OnAsset had desired this specific information, it should have asked for this information specifically instead of or in addition to propounding a general damages interrogatory.

The Court does note that it appears that Zebra's response to this interrogatory might not have been a full and complete response. However, OnAsset should have raised that issue in relation to a motion to compel or other mechanism if OnAsset wanted a full response to this interrogatory. The issue before the Court on this Motion is whether or not Interrogatory No. 3 would have tasked Zebra to produce information regarding non-infringing alternatives or how non-infringing alternatives relate to Zebra's damages model. As stated above, the Court does not see that this interrogatory specifically required Zebra to produce the information that OnAsset asserts should have been produced.

Regardless, even if Zebra should have included non-infringing alternative information in its response to Interrogatory No. 3, it is not clear that OnAsset was harmed by any such failure to include this information. The subject of non-infringing alternatives and how they relate to damages is often, as the case is here, within the

realm of expert discovery as expert testimony is typically necessary to support an assertion that an alternative is a non-infringing alternative. OnAsset was timely informed of Zebra's non-infringing alternatives during expert discovery. If OnAsset was truly concerned about the asserted non-infringing alternatives and the related damages, it could and, more importantly, should have conducted expert discovery on the matter. OnAsset fails to provide any reasonable explanation as to why OnAsset could not or did not conduct expert discovery on the subject of non-infringing alternatives once the issue was raised by Zebra's experts.

The Court has carefully considered the aforementioned and the factors relevant to deciding whether to exclude an expert witness for failure to comply with Rule 26(a)(2). *See Tex. A&M Rsch. Found.*, 338 F.3d at 402 (outlining factors). This evidence is important to Zebra since it intends to use the evidence to support its damages calculations; any prejudice caused to OnAsset was the result of OnAsset itself not pursing appropriate expert discovery on the matter; and Zebra timely disclosed its non-infringing alternative theories and related damages during expert discovery. The Court concludes that OnAsset's motion to strike the testimony of Dr. Jacob Sharony and Ms. Joanne Johnson regarding non-infringing alternatives should be denied.

### B. Dr. Sharony's "Transceiver" Opinion.

OnAsset also requests that the Court strike portions of Dr. Sharony's expert report and exclude testimony at trial related to Dr. Sharony's "transceiver opinion". OnAsset asserts that Dr. Sharony's transceiver opinion is unreliable testimony because

he applies an incorrect understanding of the transceiver requirements of the claims at issue.

The claims of the '219 patent require a first radio frequency ("RF") receiver and a second RF receiver. For example, claim 1 of the '219 patent requires "a first RF transceiver supported by the support, and operative for transmitting data according to a first communications standard" and "a second RF transceiver supported by the support, and operative for transmitting the data according to a second communications standard different from the first standard." '219 Patent at 7:63-8:04. Claim 10 requires "a first and a second radio frequency (RF) transceiver." '219 Patent at 8:41.

In his expert report, Dr. Sharony asserted that a single chip or component may include both the first receiver and the second receiver, as required by the claims. In support of this assertion, Dr. Sharony opines that the hardware and circuitry of the single chip or component contains different communications standards that make up the first and second RF transceivers.

OnAsset asserts that this testimony should be stricken because it is unreliable and unhelpful to a jury because it incorrectly applies the first and second transceiver requirement of the claims. OnAsset argues that the claims require two distinct transceivers and that one chip cannot serve as two distinct transceivers. OnAsset asserts that this opinion is in contradiction with the two-transceiver requirement of the claims as is explained in the '219 patent. OnAsset, however, did not request the Court to

construe these claim limitations in its claim construction briefing in this matter, and the Court did not provide any construction of these claim limitations.

The Court disagrees with OnAsset. OnAsset is essentially attacking the merits or weight of Dr. Sharony's opinion testimony instead of challenging its reliability. OnAsset's assertions that Dr. Sharony's opinions do not make sense are simply OnAsset's disagreement with the expert's application of the claim limitations and is simply an argument that Dr. Sharony's opinion is not correct. Dr. Sharony provided his opinion that a person skilled in the art would include a single chip or component acting as two transceivers to satisfy the first and second transceiver requirements of the claims, as explained in his expert report. OnAsset simply disagrees with this testimony.

OnAsset's complaints regarding Dr. Sharony's support for his opinion goes to the weight that should be applied to the expert's testimony rather than to its admissibility. OnAsset was free to question Dr. Sharony as to the support for his opinion during depositions and is again free to inquire into the support for his opinion at the upcoming trial of this matter. Cross examination, presentation of contrary evidence, and careful instructions on the burden of proof are traditional and appropriate means to attack shaky but admissible expert evidence. *Daubert*, 509 U.S. at 595; *Micro Chem., Inc.*, 317 F.3d at 1392; *Pipitone*, 288 F.3d 239, 250 (5th Cir. 2002).

- 12 -

## III. Conclusion

For the foregoing reasons, the Court **DENIES** OnAsset's Motion to Strike Zebra's Undisclosed and Unreliable Expert Opinions (Doc. No. 202).

**SO ORDERED.**

Signed August 20th, 2025.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE